Dear Senator Murray:
This office is in receipt of your letter dated August 3, 2005, requesting an opinion concerning "a couple of fundamental issues related to riverboat gaming." Specifically, you pose the following:
 1. Is it permissible and under what circumstances may a riverboat licensee close the riverboat on which gaming takes place and still retain its license to operate a riverboat facility?
 2. Is it permissible for an entity that controls two (2) riverboat gaming licenses to operate separate riverboats at one location to consolidate one (1) license with the other and continue to operate only one (1) riverboat under both licenses at the original location?
In answering these questions, one must first consider the public policy statement of the legislature when it enacted the "Louisiana Riverboat Economic Development and Gaming Control Act". La. R.S. 27:41 et seq. (the "Riverboat Act"). The Louisiana legislature found and declared the following to be the public policy of the state:
 (1) The development of a historic riverboat industry is important to the economy of the state of Louisiana in that it will assist in the continuing growth of the tourism industry and thus will benefit the general welfare of our citizens and create new jobs. It is the intent of this Chapter to utilize Louisiana resources, goods and services in the operation and construction of riverboats to the extent allowable by law, as defined in this Chapter.
 (1) An integral part of riverboat operation and profitability is the offering of regulated gaming, among other activities.
 (2) The nature of the riverboat industry is such that the operation of riverboats on the waters of the state of Louisiana while allowing certain gaming activities will result in many benefits to the state with no significant detriment to the citizens of the state.
 La. R.S. 27:42(A).
It is obvious from this provision that the legislature approved riverboat gaming as an economic opportunity for the state and its citizens in order to help spur growth in tourism, jobs and related support services industries. Regulated gaming is vital to the enhancement of these economic opportunities as an "integral part" of riverboat operations.
In order to conduct, operate or perform riverboat gaming a license is required. La R.S. 27:47. The license to conduct riverboat gaming is an absolute privilege. Specifically, La. R.S.27:42(B) provides, in part:
 . . . Any license, permit, approval, or thing obtained or issued pursuant to the provisions of this Chapter is expressly declared by the legislature to be a pure and absolute revocable privilege and not a right, property or otherwise, under the constitutions of the United States or of the state of Louisiana. Further, the legislature declares that no holder of any license or permit acquires any vested interest or right therein or thereunder.
In addition to the statutory requirements, riverboat gaming is governed by a set of rules adopted and promulgated by the Louisiana Gaming Control Board, the agency responsible for the regulation of gaming activities. La. R.S. 27:15, 31. The following regulations are directly applicable in the consideration of the first question:
 Licenses and permits issued by the division as provided in the act and rules and regulations promulgated pursuant to the act are and shall remain the property of the division at all time.
 LAC 42:XIII. 1703(A)
 Licenses and permits are not transferable or assignable. If the status of the licensee or permittee should change such that the person no longer needs or is entitled to the license or permit, then the license or permit shall be canceled and any tangible item which evinces such a license or permit shall be surrendered to the division within five days of the change or status. Any license or permit surrendered pursuant to the section shall be marked canceled or destroyed.
 LAC 42:XIII. 1705
 Any license or permit issued by the division is deemed to be a revocable privilege and no person holding such a license or permit is deemed to have acquired any vested rights therein. An applicant for a riverboat gaming license or permit authorized by the act and/or these regulations, is seeking the granting of a privilege, and the burden of proving his qualification to receive the license or permit is at times on the applicant.
 LAC 42:XIII. 2103(A)
In responding to your first question, the assumption is made that the licensee is voluntarily ceasing gaming operations. Such an event would represent a change in status such that the license is no longer needed and in accordance with LAC 42:XIII. 1705, the license must be surrendered to the regulatory agency.
In your second question, you inquire as to whether an operator can operate one riverboat under two separate licenses. La. R.S.27:44(14) provides: "License" or "gaming license" means a license or authorization to conduct gaming activities on a riverboat
issued pursuant to the provisions of this Chapter.
LAC 42:XII. 2119 provides:
 One license to operate riverboat gaming will be issued for each riverboat with a designated gaming area, even though multiple individuals may file or be required to file application related thereto.
The licensing statutes and regulations set forth a regulatory scheme which provides that one license issued pursuant to the Act authorizes the licensee to conduct gaming activities or gaming operations on one riverboat. Accordingly, in answer to your second question, an operator cannot operate one riverboat under two licenses.
In summation, the statutory framework and supporting regulations of the Riverboat Act clearly provide that it is the state's responsibility, operating through its designated regulatory agencies, to assess the economic opportunities and advantages of issuing riverboat gaming licenses. The license is granted for the privilege of conducting gaming operations on one riverboat; if the gaming operator voluntarily chooses to cease gaming operations, the privilege is lost and the license must be returned to the state.
We trust this addresses your request. If you should have any additional questions or comments please contact our office.
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 BY: ___________________________________________ Leonce Gautreaux, Assistant Attorney General Deputy Director, Gaming Division
CCF, JR./L GG/wba